PETE TISSINO, JAMES EVANGELINE and LU-
DINE Z. EVANGELINE,
*Plaintiffs and Respondents,*

vs.

HARRY MAVRAKIS, H. WILLIAM LAMET, JOAN
M. LAMET, MARTIN LARSON and EMMA C.
LARSON,
*Defendants and Appellants.*

(No. 2484; Decided February 20th, 1951; 228 Pac. (2d) 106)

562

For the defendants and appellants the cause was submitted upon the brief of Jack Wolfe of Sheridan, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief of John F. Raper and R. G. Diefenderfer, both of Sheridan, Wyoming.

## OPINION

RINER, Justice.

The District Court of Sheridan County rendered the judgment in question here, in an action where Pete Tissino, James Evangeline and Ludine Z. Evangeline were the plaintiffs and Harry Mavrakis was defendant. Hereinafter for convenience, all parties to the action will be designated as they appeared in the District Court or by their surnames. The judgment aforesaid found in favor of plaintiffs and was so rendered. The defendant above named and other defendants shown subsequently by the answer herein as persons claiming an interest in the matters set forth in plaintiff's petition have instituted these appeal proceedings. That pleading, filed January 30th 1948, is substantially as follows:

It is alleged in paragraph "I" that Tissino is the owner of the following described real property situate in Sheridan County, Wyoming, to wit: Lot 7, Block 1, Tschirgi Addition to the Town, now City, of Sheridan, Wyoming and Lot 9 of the Subdivision of Lot 8 and part of Lot 13, of said Tschirgi Addition; in paragraph "II" that the Evangelines are the owners of the following described real property situate in Sheridan County, Wyoming, to wit: Lot 1 of the Subdivision of Lot 8 and part of Lot 13, Block 1, Tschirgi Addition to the Town, now City, of Sheridan, Wyoming, except for a portion thereof, the exact description of which is unknown to plaintiffs, which said portion is owned by the defendant, Mavrakis.

Following these paragraphs it is set forth in paragraph "III" that on December 23rd 1907, Frank Tschirgi and Ella N. Tschirgi, then the owners of the

land hereinafter mentioned, recorded in the County Clerk's office of Sheridan County, Wyoming, a duly acknowledged plat for the purpose of laying out suburban lots as "Subdivision of Lot 8 and part of lot 13, Block 1, Tschirgi Addition," said plat being recorded at page 63 of Book "A" of Plats, in said office where it still appears; that said plat has never been vacated.

Paragraph "IV" states that this plat accurately described all the subdivisions of this land, numbered the same by progressive numbers, gave the dimensions thereof and the breadth and courses of all streets and alleys therein, including a street on said plat designated as "Harvey Avenue" and three alleys, one extending from Harvey Avenue northwestward along the northeast line of Lot 5 to the northwest side of said subdivision; one extending from that alley along the northwest side of lots 5, 6, 7 and 8 of said subdivision southwestward to the northeast line of lot 9 of said subdivision; and one extending from the last mentioned alley along said north east line of lot 9 southwestward to said Harvey Avenue, that the then owners of said plat expressly dedicated said street and alleys to the public use.

Paragraph "V" avers by reason of the acknowledgment and recording of said plat, the public became the owner in fee simple title of this street and these allays, a title never divested, and which never divested and still exists in the public; that plaintiffs have a general public interest in said street and alleys and have a special interest therein due to that fact that portions of their respective tracts hereinabove described abut on said street and alleys north of the south line of Lot 9 of said subdivision extended across said Harvey Avenue and therefore entitled by law to have said portion of said Harvey Avenue and said alleys kept open and un-

obstructed for their use and that of the public generally.

Paragraph "VI" alleges that Mavrakis in violation of law and the rights of the public and these plaintiffs, unlawfully claims to be the owner of said street and alleys and has unlawfully obstructed said street and alleys by erecting a garage upon a portion of said street, by fencing off said street and said alleys, within his own enclosure, and by using portions of said street and alleys for his own purposes so that they cannot be used by the public or these plaintiffs; that defendant Mavrakis denies that the plaintiff or the public have any title to, or right to use, said street and alleys.

Paragraph "VII" asserts that by reason of the foregoing facts the rights, status and legal relations of plaintiffs are affected by the provisions of Sections 29-1101, 29-1102 and 29-1103 W.C.S. 1945 and they are entitled to have determined the question of the validity of said Mavrakis' acts and claims above set out; that a judgment herein will terminate the controversy between him and plaintiffs and also the public.

It is alleged in paragraph "VIII" that unless enjoined by the Court the defendant will continue his unlawful acts; that plaintiffs have no adequate remedy at law and that a continuance of said acts by the defendant will produce irreparable injury to plaintiffs and the public.

The prayer of plaintiffs' petition was that the rights and status of plaintiffs, the defendant Mavrakis and the public in and to the portion of Harvey Avenue above mentioned and to said alleys be determined by the Court; that said portion of Harvey Avenue and said alleys be decreed to belong to the public in fee simple; that Mavrakis be permanently enjoined from obstructing Harvey Avenue or any alley in said subdivision

mentioned in this petition in any manner and form using same for his private purposes; and that defendant Mavrakis be ordered to remove forthwith any and all buildings, fences or other obstruction that have been maintained by him upon or across said alleys or any portion of said Harvey Avenue.

Mavrakis, by his counsel, in writing accepted service of this petition, waived issuance and service of summons in the action and stated that thereby he expressly accepted "the jurisdiction of" the District Court of Sheridan County "for all purposes of this cause," agreeing to plead to said petition by a stated date.

The defendant, Mavrakis, filed his answer August 7th 1948. The initial un-numbered paragraph of said answer stated that H. William Lamet, Joan M. Lamet, Martin Larson and Emma C. Larson, who are the present owners of about one half of the strip of land once referred to as "Harvey Avenue" in 1907 and therefore parties in interest in the matters set forth in plaintiff's petition filed herein, voluntarily join themselves with Mavrakis as parties defendant herein and for answer to plaintiff's petition say in substance in paragraph "I" that they "deny each and every material allegation" in plaintiff's petition set forth.

For a further separate defense in paragraph "II" defendants alleged that the plat of subdivision of Lot 8 and part of 13 block 1 Tschirgi Addition did not contain a statement to the effect that " 'the above or foregoing sub-division of (here insert a correct description of the land or parcel sub-divided) as appears on this plat, is with the free consent, and in accordance with the desires of the undersigned owners and proprietors,' " as required by the provisions of sections 116-202 W.R.S. 1931 (Section 29-1102, W.C.S. 1945 incorporating the amendment found in Laws of Wyo-

ming 1943 Ch. 88 § 1, as set out in the proviso clause) and said plat is without legal effect.

The third separate defense of defendant as set out in paragraph "III" thereof stated that all of the Tschirgi Addition aforesaid is without the corporate limits of the City of Sheridan and therefore whether a county road should be established therein rests solely in the sound discretion of the Board of County Commissioners as governed by the provisions of Article "2" Ch. 52 W.R.S. 1931 (cf. 48-301 of Article 3 W.C.S. 1945 et seq) not subject to control by the District Court in the absence of abuse of that discretion; that the County Commissioners have refused to expend public funds to open a county road for plaintiff and will so continue for the reason that a cul de sac would not benefit the public.

The 4th separate defense of the defendant's answer appearing in paragraph "IV" thereof alleged that Harvey Avenue was vacated by all of the proprietors of said Tschirgi plat under the provisions of § 116-206 W.R.S. (cf § 29-1106 W.C.S. 1945) by virtue of two recorded deeds in the County Clerk's Office of Sheridan County in Book 48 of Deeds at page 288 and Book 55 of Deeds at page 392; that by virtue thereof these defendants became the sole owners of the land referred to as "Harvey Avenue" in accord with the provisions of § 116-207 W.R.S. 1931 (cf. § 29-1107 W.C.S. 1945.)

Paragraph "V" of defendant's answer alleged in substance that the said plat of Tschirgi's Addition was never accepted by "any duly constituted authorities, either city or county," according to W.C.S. 1945 § 29-1102 and until so accepted plaintiffs have no vested right in any streets or alleys in said plat.

Paragraph "VI" of said answer states that on account of supervening natural conditions described

therein it was impossible to open Harvey Avenue. This defense appears to have been abandoned by defendants.

This answer of defendants was accompanied by a "Cross Petition" which in substance reiterates the above asserted defenses and also that the defendants and their predecessors in title have been in the "actual, exclusive and adverse possession of all of Harvey Avenue and connecting alleys shown on aforesaid plat, (and as indicated to be within the confines of their respective fence lines in Exhibit 'A' of the Agreed Statement of Facts on file herein which exhibit is hereby referred to, incorporated herein, and made a part hereof)."

Plaintiff filed a reply and answer to the defendant's pleading the same being in effect a general denial of all affirmative allegations therein except that they admit they claim an interest in Harvey Avenue.

The cause was tried to the Court without jury, and upon an "Agreed Statement of Facts" and also a "Supplemental Agreed Statement of Facts." No other evidence than these two Agreed Statements of Fact appears to have been presented to the Court. These Agreed Statements of Fact are so long and involved that we shall refer to them only as may be necessary to properly consider and dispose of the contentions of the parties. As hereinbefore indicated the judgment entered by the court was in favor of the plaintiffs and it Adjudged and Ordered as follows:

"That the fee simple title to all of that portion of Harvey Avenue, North of the South line of Lot Nine (9), being a part of the Subdivision of Lot Eight (8) and part of Lot Thirteen (13) of Block One (1), Tschirgi Addition, Sheridan County, Wyoming, the Plat of which is duly recorded at Page 63 of Book "A" of Plats, in the Office of the County Clerk and Ex-Officio Register of Deeds in and for Sheridan County, State

of Wyoming at Sheridan, Wyoming, together with all alleys within such Subdivision lying North of said South line of said Lot Nine (9), as shown by said Plat, belongs to the public and such fee simple title is hereby confirmed in the public, for public use as such street and alleys.

"IT IS FURTHER ORDERED that the Defendant, Harry Mavrakis, and all persons holding through and from him, be, and they are hereby, forever permanently enjoined and restrained from, in any manner, obstructing such portion of Harvey Avenue or any alley in said Subdivision as above described or any portion thereof, and from using the same for his private purposes; and, said Defendant is hereby ordered to forthwith remove, any and all buildings, fences or other obstructions that have been placed by him on any such portion of said Harvey Avenue or any of the said alleys in said subdivision or which are now claimed or maintained by said Defendant, Harry Mavrakis."

Before proceeding further, we should quote verbatim the 16th paragraph of the Agreed Statement of Facts which reads:

"The plaintiffs expressly disclaim and waive any right, title or interest in or to Harvey Avenue or any alleys south of the North line of Lot 10 of said sub-division, which property is claimed by the Defendants Lamet and Larson."

It will be observed that although all the defendants have appealed from the judgment aforesaid, that instrument does not deal with any property *South* of the south line of Lot 9 of the plat in question here, which property is owned by the Lamets and Larsons. They are not mentioned adversely in the judgment aforesaid and it is not perceived how they are harmed. It appears from the several Agreed Statements of Fact also that none of the owners of Lot 9 ever joined in any attempt to abandon that portion of Harvey Avenue and the alleys subjoined thereof lying north of the south line of the said Lot 9 extended across Harvey Avenue.

The law governing the platting of suburban property such as that here involved at the time said platting was undertaken by Frank Tschirgi and Ella N. Tschirgi is found in sections 767-772 inclusive of the W.R.S. 1899 which read thus:

"Sec. 767. Every original owner or proprietor of any tract or parcel of land, who has heretofore sub-divided, or shall hereafter sub-divide, the same into three or more parts for the purpose of laying out any town or city, or any addition thereto, or any part thereof, or *suburban lot*, shall cause a plat of such sub-division, with references to known or permanent monuments, to be made, which shall accurately·describe all the sub-divisions of such tract or parcel of land, numbering the same by progressive numbers, and giving the dimensions, and length and breadth thereof, and the breadth and courses of all the streets and alleys established therein. Descriptions of lots or parcels of land in such sub-divisions, according to the number and designation thereof, on said plat contained, in conveyances, or for the purposes of taxation, shall be deemed good and valid for all intents and purposes. The duty to file for record a plat, as provided herein, shall attach as a covenant or warranty, in all conveyances of any part or parcel of such sub-divisions by the original owners or proprietors, against any and all assessments, costs and damages, paid lost or incurred by any grantee or person claiming under him, in consequence of the omission on the part of said owner or proprietors to file such plat. (Italics supplied).

"Sec. 768. Every such plat shall contain a statement to the effect that 'the above or foregoing sub-division of (here insert a correct description of the land or parcel sub-divided) as appears on this plat, is with the free consent, and in accordance with the desires of the undersigned owners and proprietors,' which shall be signed by the owners and proprietors, and shall be duly acknowledged before some officer authorized to take the acknowledgment of deeds; and when thus executed and acknowledged, said plat shall be filed for record and recorded in the office of the clerk of the proper county.
"Sec. 769. *The acknowledgment and recording of such*

*plat is equivalent to a deed in fee simple of such portion
of the premises platted as is on such plat set apart for
streets, or other public use,* or is thereon dedicated to
charitable, religious or educational purposes. (Italics
supplied.)

"Sec. 770. Streets and alleys so platted and laid out, or
which have been platted or laid out under any prior law
of this state regulating private plats, may be altered or
vacated in the manner provided by law for the altera-
tion or discontinuance of highways.

"Sec. 771. Any such plat may be vacated by the pro-
prietors thereof at any time before the sale of any lots
therein, by a written instrument declaring the same to
be vacated, duly executed, acknowledged or proved and
recorded in the same office with the plat to be vacated,
and the execution and recording of such writing shall
operate to destroy the force and effect of the recording
of the plat so vacated, and to divert (divest), all public
rights in the streets, alleys, commons and public
grounds laid out or described in such plat, and in case
where any lots have been sold, the plat may be vacated
as herein provided, by all the owners of lots in such
plat joining in the execution of the writing aforesaid.
"Sec. 772. Any part of a plat may be vacated under the
provisions, and subject to the conditions of this chap-
ter; Provided, Such vacating does not abridge or de-
stroy any of the rights and privileges of other pro-
prietors in said plat; And provided further, That noth-
ing contained in this section shall authorize the closing
or obstructing of any public highway laid out according
to law."

The text of the Statutes last above quoted is identical
with that set forth in W.R.S. 1931 Sections 116-201,
202, 203, 204, 205 and 206, and also that set forth in
W.C.S. 1945 sections 29-1101, 1102, 1103, 1104, 1105
and 1106, with the exception that by laws of Wyoming
1943 Ch. 88 § 1, the following proviso was added to
section 116-202 W.R.S. 1931:

"* * * Provided, however, that any such plat of land
adjacent to any incorporated city or town, or within
one mile of the boundaries of any such city or town,

shall be jointly approved by both the board of county commissioners of said county and the legislative body of said city or town before same shall be filed and recorded in the office of the county clerk as aforesaid."

The first contention of Mavrakis is that "The District Court had no jurisdiction over the subject matter of the action set forth in plaintiff's petition because 'exclusive jurisdiction of highways is vested in the County Commissioners'" and it is insisted that plaintiffs are "attempting to establish and open a county highway by direct proceedings in the District Court without making any attempt to comply with statutory procedure and without any regard to the delegated powers of the County Commissioners." But at the time the plat was filed sections 767-772 inclusive of W.R.S. 1899, as we have seen, were operative. Indeed the only change that was made in these six sections as they now stand occurred in 1943 affecting section 116-202 of W.R.S. 1931, by adding to it the proviso quoted above.

The situation now presented by the case at bar will be extremely unlikely to again arise in consequence of such change because of the requirements set forth in the 1943 added proviso supra.

The action before us merely seeks a declaratory judgment settling the rights of the plaintiffs and public in Harvey Avenue and the three alleys described in plaintiff's petition as well as an injunction against Mavrakis restraining him from obstructing said alleys and Harvey Avenue respectively. As appears by § 769 of W.R.S. 1899 supra the "acknowledgment and recording of such plat is equivalent to a deed in fee simple" of the platted alleys and avenue here involved to the public. That being so we fail to see why the District Court should not have power to determine the effect of such dedication as to both the public and those who purchased

rights in said plat, or who had property abutting thereon. There is no merit that we can see in this contention on behalf of Mavrakis.

It is also insisted for him that the plat in question "was not a statutory dedication" because it "did not conform to the statute" in these particulars: (a) It did not have the "required certificate" attached thereon; (b) It did not have "the necessary subscribing witness" and (c) The "Notary Public failed to state when her commission expired if she had one."

The criticism of the certificate accompanying the plat aforesaid: ("a" above) is that as the Statute (§ 768 W.R.S. 1899 supra) requires that the sub-division undertaken to be made "must have a statement to the effect that 'said sub-division' is with the free consent and in accordance with the desires of the undersigned owners" and this certificate before us reads only: "The accompanying plat is made with the free consent and in accordance with the said owners and proprietors" omitting the words "desires of" after the words "in accordance with the". It is manifest that this was a mere clerical error on the part of the scrivener and it appears to us that the words "desires of" add nothing to the sense of the certificate. If the plat was made with the "free consent" of the owners of the land involved it is difficult to see that it was not in accordance with "the desires of" the land owners.

Regarding "(b)" and "(c)" supra, it is sufficient to call attention to section 66-304 W.C.S. 1945 (Laws of Wyoming 1935 Ch. 46 § 4) which reads so far as is pertinent here:

"* * * any conveyance of real estate made ten (10) years or more prior to January 1st, A.D. 1935, purporting to be acknowledged before any notary public; where such notary public did not attached his seal to such certificate of acknowledgment, or did not state

therein the expiration of the time of his commission; and any conveyance of real estate made ten (10) years or more, prior to the 1st day of January, A.D. 1935, where such conveyance does not purport to be properly witnessed; * * * shall, if the same has been heretofore recorded ten (10) years or more prior to January 1st, 1935, in the office of the county clerk of the county where the real estate therein conveyed is situate, be deemed as valid and as effective and binding as though the defects and irregularities therein, herein mentioned, did not exist and as though in these respects the same had been executed in full accordance with the laws of this state, and the record, or the certified copy thereof, shall be admitted in evidence in all actions or proceedings with the same force and effect as though the defects and irregularities therein, herein mentioned, did not exist, and as though in these respects the same had been executed in full accordance with the laws of this state."

Also § 66-302 W.C.S. 1945 (Laws of Wyoming Ch. 46 § 2) which in part reads:

"All deeds, mortgages, *or other instruments* executed five (5) years prior to January 1, 1935, not witnessed, and admitted to record, which, under the laws of the state of Wyoming should have been executed in the presence of one witness, shall be deemed as valid and binding as if the same had been executed in the presence of a witness, and shall be so construed by the courts of this state, and the records thereof shall have the same force and effect as if such deeds, mortgages, and other instruments had been executed in the presence of a witness * * *" (Italics supplied.)

In 26 C.J.S. 88 it is said:

"Curative statutes relating to acknowledgments have been held to give full validity and efficacy as a statutory dedication to defectively acknowledged plats. * * * it has been held that a failure to comply with some of the statutory requirements may be so cured by subsequent acts of the dedicator as to make the original defective dedication operate as a statutory one, as in the case of the subsequent execution, delivery and recorda-

tion of a power of attorney or a conveyance by the owner under circumstances that may be considered as a ratification or estoppel on his part."

See also Weeping Water v. Reed 21 Neb. 261; 31 N.W. 797; Meacham v. Seattle 45 Wash. 380; 88 Pac. 628. The case of Curtiss & Yale Co. v. City of Minneapolis, 123 Minn. 344; 144 N.W. 150; was one where a stated defective plat was considered and this was said concerning it:

"The plat was defective. It was not signed by Tuttle, the proprietor of the land platted, and contained no express dedication of the streets and alleys thereon marked out. The acknowledgment, though in proper form, was rendered defective by the failure of the notary to affix his official seal thereto. But it is clear that these defects are not now fatal to the validity of the plat. The defect arising from the failure of Tuttle to sign the plat was cured by his act in filing the same in the office of the register of deeds, and subsequently conveying lots therein according to the descriptions therein found. Such filing and sale of the lots by reference to the plat amounted in law to a dedication, and answered every purpose of a formal written dedication indorsed upon the plat. 3. Dillon Mun. Corp. (5th Ed.) 1083; Hurley v. Railway Co., 34 Minn. 143, 24 N. W. 917; Nagel v. Dean, 94 Minn. 25, 101, N.W. 954. The failure of the notary to attach his official seal to the acknowledgment was cured by section 1 of Chapter 57, Laws Ex. Sess. 1881, by which the Legislature legalized all plats theretofore prepared and filed, where there was a failure to comply with any of the statutory requirements. That statute is general in its language, and was intended to legalize all defective plats, regardless of the nature of the defect. It applies to this plat. That the Legislature had the constitutional power to cure the defects in this manner is well settled by the authorities. Stuttgart v. John 85 Ark. 520, 109 S.W. 541; Williams v. Milwaukee Expo. Association, 79 Wis. 524, 48 N.W. 665. The case comes within the general rule that 'if the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the Legislature might' originally

'have dispensed with, * * * then a subsequent statute dispensing with it retrospectively must be sustained.' Cooley, Const. Lim. 458; State v. Bruggerman 31 Minn. 493, 18 N.W. 454; Fransworth Co. v. Commonwealth Co., 84 Minn. 62 86 N.W. 877; 1 Dunnell's Dig. 1620; Blount v. Janesville, 31 Wis. 650."

In Parriott v. Inc. City of Hampton 134 Iowa 157; 111 N.W. 440 it appeared that a plat of land as an addition to a city had an acknowledgment which was defective in that the notary taking it did not certify that the owners were the persons then before him or whose names were subscribed and that they acknowledged the same to be their voluntary act and deed and the notarial seal was omitted. A curative statute was passed after the plat in question was actually recorded and shortly prior to the taking effect of this statute, the person making the plat had conveyed the tract by a deed recognizing the plat and subsequently such grantee similarly conveyed. The curative act (Code 1873 § 1967 as amended by Ch. 42, page 68 Acts 24th, Gen. Assem.) provided that the acknowledgment of all deeds or other instruments in writing taken and certified prior to February 1892 and duly recorded were declared to be legal and valid anything in the laws of the state in regard to acknowledgments notwithstanding. It was held that the owner of the tract could not enjoin the opening of streets on the ground that there had been no sufficient dedication. The court in part said:

"But when acknowledgment is effectual through a curative act prior to the acceptance of the streets, and there are no intervening equities, the title to the ground so set apart will thereupon vest in the town or city. Such was the conclusion of this court in Bresser v. Saarman, supra, for adoptive papers do not become effective until acknowledged and filed for record. In this case the curative act went into effect in 1892, shortly after Kennedy had conveyed the platted ground to Gray. That conveyance distinctly recognized the plat by describing the several blocks therein, and Gray conveyed in the

same way to Bailey in 1901. These parties, then, were not only advised of the existence of the plat, but recognized and adopted it in transferring the property. In these circumstances, it is manifest that the plat became effective upon the adoption of the curative act, for, though up to that time the attempt to plat had not been effective, the act healed the defect in the acknowledgment and the plat was then acknowledged and recorded as required by law. The plat as thus made harmonized with the conveyance previously made to Gray and subsequently by him to Bailey and others. * * * The plat was an instrument in writing, within the meaning of the curative act (Williams v. Milwaukee, etc., Ass'n, 48 N.W. 665, 79 Wis. 524), and, in the circumstances disclosed, we are inclined to uphold the validity of the plat."

See also Kennedy v. Barnish 244 Wis. 137; 11 N.W. (2d) 682;

We are unable to sustain Mavrakis' contention last above mentioned.

It is next insisted for the defendant, Mavrakis, that the dedication of a street is "a mere offer and same does not become a public highway until accepted by the proper public officials."

In the Supplemental Agreed Statement of Facts appears the following:

"1. That Frank Tschirgi and Ella N. Tschirgi, husband and wife, conveyed to Ethel Dewey by warranty deed dated April 1, 1908, recorded on the 18th day of June, 1908 at Page 381 of Book U of Deeds, in the Office of the County Clerk and Ex-Officio Register of Deeds of Sheridan County, Wyoming, real property in said County described as follows: Lot No. 9 of the Subdivision of Lot No. 8, and a part of Lot No. 13 of Block No. 1 of the Tschirgi Addition to the Town of Sheridan, Wyoming; and Plaintiff; Pete Tissino, became, and now is, the owner of said Lot 9 through mesne conveyances thereafter, as set forth in paragraphs 10 and 11 of the Agreed Statement of Facts."

Paragraphs 10 and 11 of the Agreed Statements of Fact referred to above read thus:

"10. In 1939, Peter Nedeff and Carl L. Sackett had record title to all lots adjacent to Harvey Avenue or the connecting alleys, except Lot 9, which was owned by Robert J. Thirwell from September 26, 1938 to July 6, 1939, and by one Albert Brunner from July 6, 1939 to March 17, 1942, at which time said Lot 9, together with Lot 7 of the aforesaid original Tschirgi Addition, were agreed to be sold, by agreement for warranty deed (not recorded), to Hilda B. Tissino, wife of Plaintiff Pete Tissino.

"11. Plaintiff Pete Tissino obtained title to the property shown on Exhibit 'A' by virtue of an order of the Sheridan County District Court setting over homestead, entered June 12, 1944, as follows and as shown in Entry No. 47, Wilcox Abstract No. 3768:

"IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DECREED that the following described property in Sheridan County, Wyoming, to-wit: "All the right, title and interest and equity of said Deceased under Agreement for Warranty Deed with Albert Brunner and Susan Brunner, husband and wife, dated March 17th, 1942, in and to Lot Number 7 in Block number 1, and Lot number 9 of the Sub-division of Lot number 8 and part of Lot number 13 in Block number 1 of the Tschirgi Addition to the Town, now City of Sheridan, Wyoming, as said Lots and Block and Sub-division are shown and numbered on the plat of said Addition on file and of record in the office of the County and Ex-Officio Register of Deeds of Sheridan County, Wyoming, together with all improvements of every kind thereon erected or situated and all appurtenances thereto:

"be and the same is hereby set over to Pete Tissino, of Sheridan County, Wyoming, as his sole and absolute property under the homestead exemption laws of the State of Wyoming.

Estate closed and Administrator discharged."
NOTE. A Copy of the Decree setting over homestead appears of record in Book 55 of Deeds, at Page 262.

Also it should be noted here that paragraph 12 of the same Statement of Facts reads as follows:

"12. There is no recorded instrument indicating any intention on the part of either Robert J. Thirwell or Albert Brunner to abandon or vacate Harvey Avenue or connecting alleys in the Subdivision in question. Said Lot 9 was vacant and unimproved until the latter part of 1947."

It thus appears that Frank Tschirgi and his wife Ella N. Tschirgi sold lots pursuant to the plat they had recorded to various purchasers and title thereof passed ultimately to Tissino and his wife by mesne conveyances. Paragraph 9 of the Agreed Statement of Facts states that:

"9. Plaintiffs James Evangeline and Ludine Z. Evangeline purchased the balance of Lot 1, Subdivision of Lot 8 and part of Lot 13, Block 1 of the Tschirgi Addition, from the aforesaid Peter Nedeff and Vilica Nedeff on the 5th day of October 1945."

In 16 Am. Jur. 399 § 51, it is said:

"* * * In order to constitute a valid statutory dedication of land to public use, there must be a substantial compliance with the provisions of the statute. As a rule, such dedications operate by way of grant, and the necessity of acceptance by the public is dispensed with or, at least, is shown by the record."

On the authority of numerous cases 26 C.J.S. 145, § 58 says that:

"According to the weight of authority a dedication of land for public use effected by platting and the sale of lots with reference thereto is, in the absence of statute providing for annulment, a completed and irrevocable dedication, even though there has been no formal acceptance by the public authorities, or the property is not, or cannot, at once, be subjected to the uses designated, or for a considerable period of time only a part of the land designated is used, or can be used. Neither the lapse of time nor the act of a municipal government

can waive the public right to take possession of a street or highway so dedicated, since the legislature alone has the power to release the dedicated land and to discharge the public servitude. The view taken by many decisions is that the purchase of lots is in effect an acceptance by the public, and that the purchase of a single lot is sufficient to perfect the dedication."

In 1. Elliott, Roads and Streets, 4th ed. 143 § 125 the author, supported by many decisions cited in the notes, points out that:

"A distinguishing difference between a statutory and common-law dedication is said to be that the former operates by way of a grant, and the latter by way of an estoppel in pais rather than by grant. In many of the states a valid statutory dedication operates to vest the fee in the city, or the county, as the case may be, and this has been held to dispense with acceptance on the part of the public."

The same able writer also says in section 124 of the same text that:

"So, even where there is no acceptance on the part of the public they will be regarded as ways, and will be kept open for the benefit of those who have purchased lots with reference to the location and existence of the streets and roads represented upon the maps or plats. And 'the right passing to the purchaser is not the mere right that he may use the street but that all persons may use it.'"

In this connection it will be recalled that section 769 W.R.S. 1899 supra declares that the acknowledgment and recording of the statutory plat shall operate as a "deed in fee simple" of the portions of the platted premises as "are set apart for streets or other public use" by the public.

Under the circumstances appearing here and the law applicable as we see it this contention also of Mavrakis is not tenable.

Finally, the defendant, Mavrakis, urges that "the doctrine of adverse possession applies where there has been no acceptance of a dedicated street by the proper authorities and since it is admitted that there was adverse possession by the defendants judgment should be in their favor."

There are a number of valid reasons why this contention should not prevail. We have seen that it was unnecessary at the time the plat in question was filed that there should be any acceptance by public authority of the grant thereby established. Title to the platted streets and alleys passed to the public by virtue of the express provisions of the law covering the matter section 769 W.R.S. 1899 supra. There was no vacation of the aforesaid plat so far as the property here involved is concerned undertaken by anyone. It is true that so far as concerns the property acquired by the defendants, Lamets and Larsons, that the Agreed Statement of Facts shows there was an attempted vacation of the plat aforesaid, but that property by the Agreed Statement of Fact appears not to be affected by the instant litigation as concerns "Harvey Avenue or any alleys south of the north line of Lot 10" of the platted subdivision aforesaid.

Then there is the well known rule as phrased by 2 C.J.S. 528 § 14 that:

"Generally speaking, title to property dedicated or devoted to a public use cannot be acquired by prescription or adverse possession. Title to such property cannot be acquired by adverse possession as against the public or as against the state or a political subdivision thereof, such as a county."

and as hereinbefore stated there never was any move made by the predecessors in interest of the plaintiffs to vacate any of said plat.

It appears further by the Agreed Statement of Facts herein that defendant, Mavrakis, purchased and took possession of the property he now owns in the plat aforesaid in the year 1939. He received his deed for same from Peter and Vilica Nedeff in 1944. That deed states, according to the Agreed Statement of Facts, that:

"Grantors convey and warrant to grantees the following described real estate, situate in Sheridan County, Wyoming, releasing and waiving homestead rights, to-wit:

"All of Lots 2, 5, 6, 7 and 8; Lots 3 and 4, except the Northerly 50 feet of the Easterly 120 feet thereof; also that part of Lot 1, described as follows: Commencing at the Northeast corner of said Lot 1, thence southwesterly along the Southerly line of Harvey Ave. 236 feet to a point; thence Southeasterly at right angles to said Harvey Avenue 63 feet to a point; thence Northeasterly parallel to said Harvey Avenue 155 feet to a point; thence Southeasterly at right angles to said Harvey Avenue 34 feet to a point; thence Northeasterly parallel to said Harvey Avenue 10 feet to a point; thence Northeasterly to a point on Coffeen Avenue 71 feet Southeasterly from the point of beginning; thence Northwesterly 71 feet to a point of beginning; all being in the Subdivision of Lot 8 and part of Lot 13, of Block 1, Tschirgi Addition to the Town, now City of Sheridan.

"Together with all improvements and water rights.

"Signed, sealed and delivered in Presence of Maurice Wilcox.

"Acknowledged by Peter Nedeff and Vilica Nedeff, including release and waiver of homestead rights, before Maurice Wilcox, Notary Public of Sheridan County, Wyoming, Dec. 2, 1944, the said wife having been apprised of her rights and the effect of signing and acknowledging said instrument. Commission expires August 18, 1945. (Seal)".

Several important facts appear by the conveyance just described, viz.: This deed recognizes the Tschirgi Addition to the town, now City of Sheridan. It also expressly recognizes and uses as a boundary line for the tract conveyed by the metes and bounds the street known as "Harvey Avenue" on said plat and it makes no effort to include any part of said avenue in the deed. Mavrakis did not take possession of the property he owns until 1939. The action at bar was brought January 30, 1948. Obviously the ten years Statute of Limitation cannot be applied so far as his own claim is concerned. He must rely on the doctrine of "tacking" to assert such a claim; further his grantors could not and did not claim any right to Harvey Avenue or the alleys in question as shown by the 1944 deed to Mavrakis from the Nedeffs. They definitely in that instrument recognize its existence. If they really claimed to own the bed of Harvey Avenue, and the alleys in question, it is strange they did not include this property in their deed to Mavrakis. No mistake is claimed.

We fine 2 C.J.S. 696 § 131 d. stating:

"As a general proposition, a claimant may not tack to his claim arising from his possession of a disputed piece or strip of land the possession of his grantor where the disputed land was not mentioned, included, or contemplated in a deed or conveyance to him of other land. * * * and the same text also says:

"As a general proposition an adverse occupant cannot tack the possession of a prior occupant to perfect adverse title in himself where predecessor did not or could not claim the land adversely because claimant must take his predecessor's possession with all of the infirmities attaching to it."

The views expressed by the text last cited and quoted from are supported by much reliable adjudicated case law.

Louis Sachs & Sons v. Ward 182 Md. 385; 35 Atl. 2d 161; was a suit by Ward ultimately against the intervenors, Louis Sachs & Sons, for the removal of the first story of a structure erected in an alley, designated as Sutton Street, adjoining the rear of plaintiff's property laid out in 1809 by Articles of Agreement recorded among the land records of Baltimore City, stating that the alley should be "forever kept open." The defense of adverse possession was interposed by intervenors claiming that "they and their predecessors in title have been in actual, open, notorious, and continuous possession of said buildings for more than twenty years and have gained thereby adverse title and possession of the land covered by said building."

After pointing out that it had been decided in that jurisdiction that:

"It cannot be held that a street which has been clearly dedicated is not a public highway because it is a cul de sac."

the court declared that:

"With the status of Sutton Street thus determined, the defense of adverse possession set up by the appellant is unavailing. In Maryland, no such title can be maintained as against a municipal corporation, nor does prescription run against the public to defeat the right to use a public way."

The court thereafter further said:

"In weighing the equities here it is also to be borne in mind that appellants not only never acquired title to any portion of the bed of Sutton Street, but were expressly charged with notice in their own title papers and by the land records that this alley was always to be kept open and unobstructed, certainly as to the parties to the original agreements. They were charged, too, with notice from the record that the bed of the alley was never owned by any of their predecessors. Therefore, when they found this first floor structure

across the alley, completely destroying its use for the purposes originally defined of record, they took possession of it with knowledge that it did not pass to them under their deed. Nor does the absence of any earlier complaint or protest by the appellee, as to the existence of the now disputed structure, render applicable here the principle of estoppel for, as pointed out by this Court in earlier cases, it is well settled that mere silence as to rights of record does not create an estoppel. Frazee v. Frazee 79 Md. 27, 30, 28 A. 1105; Oberheim v. Reeside, supra.

"* * * The case before the Court is therefore narrowed to one where trespass was committed by the placing of this obstruction across the alley, in violation of the original covenants and in violation of the common right to use it as a public street or alley. This trespass having been clearly shown, and the appellants not having met the burden of proof upon them to support their claim of adverse possession, they are liable to appellee for the removal of the obstruction as decreed by the Chancellor."

We are additionally aided in this matter by several decisions by the New York Court of Appeals as follows:

In re City of New York v. Susannah Kraemer 270 N.Y. 495; 200 N.E. 287 was a case where the City sought to acquire title to real property for opening and extending a street. Nominal damages only were awarded Kraemer and she appealed to the Appellate Division of the Supreme Court where that judgment was affirmed (244 App. Div. 725, 278 N.Y.S. 462). She then brought the case to the Court of Appeals. The situation disclosed by the appeal papers in the case is thus given in the report of the matter:

"In 1851 a map, designated 'Map of Village of Strattonport,' was filed in the County Clerk's office of Queens County, laying out in streets and lots a large tract of land including the premises involved herein. Damage Parcel No. 1. comprises what was designated on such map as the easterly half of Henrietta street (identical

with One Hundred and Twenty-sixth street as opened in this proceeding,) abutting lots numbered 95 and 96 on such map, which were concededly owned by appellant at the time the city commenced this proceeding. Appellant's title to lots 95 and 96 devolved by mesne conveyances from one Comfield, who by deed dated October 7, 1851, conveyed to one Stratton sixteen lots, including lots 95 and 96. Following the descriptions of these lots in this deed were the words, 'Together with the land in front of said lots hereby conveyed to the centre of the streets on which said lots are bounded respectively as laid down in said (Strattonport) map. Subject, nevertheless, to the right of way over said lands composing such streets in the proprietors of the lots described on said map.' None of the deeds in appellant's chain of title, subsequent to the deed from Comfield to Stratton, purported to convey in express terms the title to the bed of Henrietta Street. Appellant's grantor took title in 1882 to lots 95 and 96, and it was conceded by the respondent city herein that he inclosed what is designated in this proceeding as Damage Parcel No. 1 with a substantial fence and cultivated the soil. It was likewise conceded that this land was partially improved with a greenhouse and later with a one-story frame structure, and that such inclosure existed continuously for over twenty years."

The Court below denied the claim of appellant to substantial damages on the authority of Matter of Village of Olean v. Steyner, 135 N.Y. 341 and Smyles v. Hastings, 22 N.Y. 217, thereby ruling against the theory of adverse possession urged on behalf of appellant, Kramer. This Order of the Appellate Division was affirmed by the Court of Appeals without opinion.

In the Steyner case supra, it appeared that certain land owners had acquired title under deeds which recognized as a street the land sought to be acquired by the Village of Olean as laid out upon a map made by a former owner who sold and conveyed, by descriptions referring to said map, certain lots. It also appeared that these land owners had conveyed lots to different

parties by descriptions referring to that map *and bounding the lots by said street as laid out on said map.* It also appeared that the land owners had fenced in, planted and adorned the contested strip of land and one of them had a house upon it. It was claimed for them that an easement, mentioned below, was extinguished by adverse possession. Denying this claim and allowing only nominal damages as awarded by the Supreme Court, the order of the latter in that respect was affirmed by the Court of Appeals. It was held (1) that:

"* * * the grantees of the original owner and the subsequent grantees in turn acquired an easement in the strip so designated as a street, and all the parties having recognized the map and bought and sold with reference to it, they had the right to have the strip kept open to its full width, after the manner and with the characteristics of a street * * *"

and (2) that:

"* * * an adverse possession could not be founded upon these facts, because of the presumption flowing from the acceptance by them of their deeds and from the conveyances made by them; that they entered in subordination to the servitude imposed, and occupied only temporarily until the use of the easement should be required."

Without extending this opinion more at length, a careful study of the record and the law as we find it to be leads to the result that there was no error committed by the District Court of Sheridan County in rendering the judgment it did, and it should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.